UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**MARY SIGL**,

           Plaintiff,

    v.

**TRAVEL TAGS, INC., a foreign business corporation, dba Western Graphics & Data**,

           Defendant.

Case No. 3:12-CV-01810-KI

OPINION AND ORDER

      Craig A. Crispin
      Crispin Employment Lawyers
      1834 SW 58th Ave.
      Suite 200
      Portland, OR 97221

           Attorney for Plaintiff

Page 1 - OPINION AND ORDER

>Eric J. Neiman
>Sharon C. Peters
>Williams, Kastner & Gibbs, PLLC
>888 SW Fifth Ave.
>Suite 600
>Portland, OR 97204
>
>>Attorneys for Defendant

KING, Judge:

Plaintiff Mary Sigl alleges defendant Travel Tags, Inc. d/b/a Western Graphics & Data ("Western") discriminated against her on the basis of disability under 42 U.S.C. §12112(a) and (b)(5)(A), as well as ORS 659A.112(1) and (2)(e). Pending before me is Western's Motion for Summary Judgment.

## BACKGROUND

Plaintiff was employed by Western, a marketing company producing gift cards and gift card packaging. Plaintiff was a temporary employee, known as a "reserve" employee, in this seasonal business. She did not work for several months in a row and her hours varied depending on the project.

Plaintiff alleges she has been diagnosed with rheumatoid arthritis, and that she has hand, back, knee and foot pain. She alleges the diagnosis came after she began experiencing pain in her hands from a six-week stint as a machine operator, working 12 hours on and 12 hours off. She went to the ER and says she was diagnosed with rheumatoid arthritis. The only diagnosis in the record is that of ganglion cyst and tooth decay. The ER physician's clinical impression was that of "chronic thumb pain with likely osteoarthritis," which is a wear-and-tear condition causing joint pain and stiffness. Peters Decl. Ex. 4, at 12.

Page 2 - OPINION AND ORDER

Plaintiff continued working until a seasonal layoff on December 2, 2012. However, she also applied for Social Security disability benefits on October 21, 2011, which was denied. She understood that her application had been denied because she "made too much money" and worked too many hours. Sigl Dep. 34:10-12; 58:15-18.

Western called plaintiff back into work on February 20, 2012 for a graveyard shift ending the morning of February 21, 2012. At the beginning of her shift, plaintiff told her supervisor, Lorne Abbett, that she could only work twenty hours a week. She told him she "had a disability" and it was getting hard to work and stand all night. Sigl Dep. 78:7; 73:6-9. He immediately agreed and sent an e-mail that night to the other managers informing them that plaintiff would be working only twenty hours per week.

Plaintiff also worked the graveyard shift starting February 21 and ending February 22. Plaintiff remembers telling Abbett the morning of February 22 that:

> the job was done, asked him what he would like me to do next. And I remember pointing to the back of the line saying, Could you set me down there so my feet – because my foot is really hurting, and could I be on the sitdown part of the pack line. He said something to the effect – it was morning time now – something to the affect [sic] of why don't you stay home tonight, let me figure out where I'm going to place you, and I will call you back into work.

Sigl Dep. 82:1-11. When plaintiff did not hear from Abbett, she called him and left a voice message saying she would report to work if she did not hear from him. She reported to work on February 26 and worked until the morning of February 27.

At the end of her last shift, the morning of February 27, plaintiff remembers again standing in front of the pack line. "I asked him – told him the job was done, asked him if I could be on the pack line, sit down. He looked over and said to me, Why don't you just stay home

Page 3 - OPINION AND ORDER

tonight, I'll call you back in when I figure out where exactly I'm going to put you. I said okay, and I left." Sigl Dep. 112:4-11. Sigl had completed her shift.[1]

After her shift ended on February 27, plaintiff went home and went to bed. She testified, "When I woke up there was a missed call from [Abbett]. I tried to call back and he didn't respond, he didn't answer. And I tried to call back a little while later, and he didn't answer, and that was it." Sigl Dep. 121:9-15.

Plaintiff thinks she applied for unemployment the same day of her last shift, or the day after. Sigl Dep. 123:17-19. Plaintiff filed another disability benefits application with the Social Security Administration on February 28, the day after her last shift. In her application, she indicated she was unable to work as of December 2, 2011. Peters Decl. Ex. 1, at 31, 33.

The Social Security Administration requested information from Western on February 29. The agency subsequently approved her application and plaintiff receives $1,305 per month in disability benefits.

Western decided to hire its temporary workers through Volt Workforce Solutions rather than managing the employees itself. As a result, in the spring of 2012, Western terminated all of its temporary employees, alerting them by voicemail and letter that they could contact Volt to begin the application process. Specifically, Amy Naillon, HR Generalist at Western Graphics, left a voicemail message on plaintiff's home telephone on March 20, 2012. Naillon followed up with a letter on March 22, 2012, which stated:

---

[1] Abbett testified that plaintiff told him she would be applying for full-time disability benefits and not returning to work. In response, Abbett told plaintiff to bring back her limitations if she returned to work, so Western could accommodate her. For purposes of resolving this motion, I must accept plaintiff's version of the conversation.

> On April 15, 2012, all Seasonal/Reserve Workforce assignments will be ended and any employees in these classifications who would like to continue their work at Western Graphics & Data will need to contact Volt Workforces Solutions to begin the pre-employment process prior to that time. You will be kept active on any assignment that you are on until April 15, 2012.

Peters Decl. Ex. 3, at 6.

Naillon sent the letter to plaintiff's home address and received a UPS confirmation that it had been left on plaintiff's front porch. Plaintiff does not remember seeing the letter, but she found a copy of the letter among her personal papers. Finally, Western's in-house counsel sent a letter to plaintiff's attorney on March 30, 2012, in response to plaintiff's demand letter. In it, Western's counsel wrote:

> Ms. Sigl currently remains a special arrangement employee of Western Graphics & Data . . . . Western Graphics & Data would recall Ms. Sigl in the ordinary course of business if she provides a doctor's note clearing her to return to work. As Ms. Sigl likely knows, we are moving all of our temporary staffing needs to Volt effective April 15, 2012. This move will streamline the temporary employee process for us and allow temporary employees benefit eligibility through Volt. We expect that Ms. Sigl will apply for and be hired by Volt and continue performing services for us as a Volt employee if she is able to return to work.

Peters Decl. Ex. 1, at 26.

Plaintiff did not apply to Volt or respond to Western. According to Western, her employment was terminated on April 15, 2012, along with the entire reserve workforce. Plaintiff has not produced evidence of having sought employment since she stopped working in February. She testified that she applied for one job in January or February 2013.

When asked during her deposition about her interactions with Abbett, plaintiff testified as follows:

> Q. You've mentioned a couple of times today that when you would ask [Abbett] for some help he would help you or say he would do what he can or that you

Page 5 - OPINION AND ORDER

    thought he would work with you, and I'm wondering if and when that ever changed.

    A.  When he didn't call me back into work.

    Q.  So up until that time [Abbett] was – you would tell [Abbett] what you needed and he would help provide it; is that right?

    A.  Yes, I believe so.

Sigl Dep. 124:25-125:9.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The initial burden is on the moving party to point out the absence of any genuine issue of material fact.  Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On a motion for summary judgment, the court "must view the evidence on summary judgment in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party."  Nicholson v. Hyannis Air Service, Inc., 580 F.3d 1116, 1122 n.1 (9th Cir. 2009) (citation omitted).

## DISCUSSION

Plaintiff must present evidence of the following elements in order to make out a prima facie case of discrimination under the ADA:  (1) she is a disabled person within the meaning of the statute; (2) she is a qualified individual with a disability because she can perform the essential functions of the job with or without reasonable accommodation; and (3) she suffered an adverse employment decision because of the disability.  Smith v. Clark Cnty. School Dist., ___ F.3d ___,

2013 WL 4437599 (9th Cir. Aug. 21, 2013). The state statute is construed consistently with the ADA. ORS 659A.139 (Oregon's discrimination law to be "construed to the extent possible in a manner that is consistent with any similar provisions" in the ADA).

Western moves for summary judgment on the following grounds: (1) plaintiff is not "disabled" as defined by the statute; (2) plaintiff is not a "qualified individual with a disability;" (3) plaintiff did not suffer an adverse employment action because of her disability; and (4) if she is disabled, Western accommodated her. Finally, if plaintiff has a claim, Western moves for partial summary judgment eliminating her back pay claim.

A.  Whether Plaintiff is Disabled

The ADA Amendments Act of 2008 (the "ADAAA") defines "disability" to mean (1) "a physical or mental impairment that substantially limits one or more major life activities of such individual," (2) "a record of such an impairment," or (3) "being regarded as having such an impairment[.]" 42 U.S.C. § 12102(1). The first and third definitions are at issue in this lawsuit.

1.  Physical or Mental Impairment

A physical or mental impairment must "substantially limit[] the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." 29 C.F.R. § 1630.2(j)(1)(ii).

Western cites plaintiff's deposition testimony suggesting she is not particularly limited by any impairments. See, e.g. Sigl Dep. 25:5-8 (testifying she could not think of any activities she is prevented from doing because of her right knee); Sigl Dep. 29:16-18 (testifying she was not

Page 7 - OPINION AND ORDER

prevented from doing any activities because of her low back); Sigl Dep. 64:10-21 (testifying that bowling is the only thing she is prevented from doing because of her low back); Sigl Dep. 25:9-13 (foot pain means she "[m]aybe just [could] not take a walk on a certain day, that would be it right now.").

Western does not, however, address plaintiff's hand pain, suggesting that because plaintiff never asked for an accommodation for her hands they cannot be the cause of her disability. Simply because plaintiff never asked Western to accommodate her hand pain does not mean she is not otherwise substantially limited by the pain. Indeed, plaintiff need not show she was substantially limited in the major life activity of *working* to survive summary judgment. McAlindin v. Cnty. of San Diego, 192 F.3d 1226, 1233 (9th Cir. 1999) ("Whether [plaintiff] faced substantial limitations in his ability to work is irrelevant to whether his limitations in other major life activities qualify him as disabled for ADA purposes."). In addition, plaintiff contends her limited deposition testimony is the result of poor questioning by Western's counsel. Plaintiff responded to questions about her "activities" not her "daily activities," and the questioning seemed to be in the context of recreational activities.

In her declaration, plaintiff testifies she was told she has rheumatoid arthritis by two different doctors. She experiences severe joint pain in her right knee and right wrist. She lives constantly in pain, which affects her sleep. Because of her knee pain, she can stand only about 10 minutes; she cannot squat or run; she has trouble climbing stairs. Her hands cramp and have begun curving inward; she is unable to grip things; she uses only plastic cups now; she cannot open jars; she has difficulty writing. She testified she often wore a right wrist brace at work, as well as a brace on her right knee, and walked with a limp. "Ninth Circuit precedent does not

Page 8 - OPINION AND ORDER

require comparative or medical evidence to establish a genuine issue of material fact regarding the impairment of a major life activity at the summary judgment stage.  Rather, our precedent supports the principle that a plaintiff's testimony may suffice to establish a genuine issue of material fact."  Head v. Glacier NW Inc., 413 F.3d 1053, 1058 (9th Cir. 2005).  Accordingly, plaintiff's testimony is sufficient to raise a genuine issue of material fact as to whether she has a physical impairment that substantially limits her ability to perform a major life activity.

      2.    <u>Regarded as Having Such Impairment</u>

Plaintiff alternatively argues Western "regarded" her as having a disability, which is an alternative basis to meet the first prong of her *prima facie* case.  To demonstrate Western "regarded" plaintiff as disabled, plaintiff need not have an actual impairment; she must establish Western discriminated against her "because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity."  42 U.S.C. § 12102(3)(A).

I conclude plaintiff has raised a triable issue of fact as to whether Western regarded plaintiff as disabled.  Plaintiff testified Shelle Pascua, the Floor Manager, often asked her about her braces.  Similarly, Abbett testified he accommodated plaintiff's disability by limiting her to a twenty hour work week.  Abbett Dep. 103:1-4.  Indeed, the Work Activity Questionnaire Abbett completed for the Social Security Administration substantially over-reported plaintiff's limitations in completing work, productivity, and absences based solely on plaintiff's request to work only twenty hours.  Finally, accepting plaintiff's testimony, when she requested assignment to a seated task, Abbett instructed her to stay home and he would call her.  He never returned plaintiff's phone call.

In sum, Western is not entitled to summary judgment.

B.      Whether Plaintiff is a Qualified Individual

A "qualified individual with a disability" is someone with a disability "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).  Western argues plaintiff cannot prove she is a qualified individual because she claimed to be totally disabled to obtain Social Security disability benefits, when she must prove for purposes of this case that she can perform the essential functions of her job at Western.  Relying on a Supreme Court case, Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 806 (1999), Western asserts that, while obtaining disability benefits does not necessarily preclude a disability discrimination claim, a plaintiff "cannot simply ignore the apparent contradiction that aries out of the earlier SSDI total disability claim.  Rather, she must proffer a sufficient explanation."

Here, plaintiff submitted her disability application one day after she last worked for Western.  In her application, she indicated she was unable to work as of "December 2, 2011." Peters Decl. Ex. 1, at 31, 33.  Western claims this is not a case where plaintiff could claim if she had been offered a reasonable accommodation, she could have continued to work.  According to Western, it offered her every accommodation she requested, and she failed to apply for a position with Volt when she had been told about it.

Plaintiff parses the language of Cleveland, arguing that it is the "*sworn* assertion in an application for disability benefits" that the applicant is "unable to work" that triggers her need to explain any potential inconsistency.  Cleveland, 526 U.S. at 806 (emphasis added).  Plaintiff never made any "sworn" statement in her disability application.  Further, she honestly reported to

Page 10 - OPINION AND ORDER

the Social Security Administration that she was "currently working," as of February 28, and she had "tried to work a couple of days a week at my last employer." Peters Decl. Ex. 1, at 32. Additionally, plaintiff claims her submission of a disability application does not contradict working for Western with accommodations such as a reduced hour schedule and lighter duty assignments.

There does not appear to be any requirement that the statement at issue be "sworn" in order to trigger the requirement for plaintiff's explanation. See Lujan v. Pac. Maritime Ass'n, 165 F.3d 738, 740-41 (9th Cir. 1999) (discussing "material factual statements" in disability applications); Cox v. Wal-Mart Stores, Inc., 441 F. App'x 547 (9th Cir. 2011) (statements in Social Security Administration application). In any event, to the extent her statements are inconsistent, plaintiff has sufficiently explained any contradictions by noting her statements to the Social Security Administration did not take into account what work she could perform with accommodations. A very recent Ninth Circuit case explains Cleveland's sufficient explanation standard is "not an exceedingly demanding one." Smith, __ F.3d __, 2013 WL 4437599, at *7. Western insists it reasonably accommodated her at every turn but, accepting plaintiff's version of the conversation, a material dispute of fact exists as to whether Abbett said he would call plaintiff back into work once he figured out where to put her and what he may have intended by that statement.

Western is not entitled to summary judgment on this element.

    C.    <u>Whether Plaintiff Suffered an Adverse Employment Action and Whether Western Accommodated Her</u>

Western also argues plaintiff did not suffer an adverse employment action. Plaintiff was terminated, along with all the other reserve employees, on April 15, 2012 and, if they applied, management of these employees was transferred to Volt. Both plaintiff and her attorney knew she could work if she applied with Volt and she did not. Western also contends it accommodated her in all the ways she requested.

Accepting plaintiff's version of the events, she left on February 27 with the understanding that Abbett would call her back to work when he could figure out how to accommodate her need to sit. He never did. As a result, plaintiff has raised a material issue of fact that Western failed to accommodate her need to sit, and to work a reduced work schedule, and failed to engage in the interactive process with her. Western's motion for summary judgment is denied on this issue.

    D.    <u>Back Pay</u>

Finally, Western argues it is entitled to judgment cutting off plaintiff's back pay under the three-part test enunciated in <u>Delima v. Home Depot U.S.A., Inc.</u>, 616 F. Supp. 2d 1055, 1093 (D. Or. 2008). The test requires an employer to show (1) substantially equivalent positions were available during the time in question, (2) that the employee could have obtained an equivalent position, and (3) that the employee failed to use reasonable diligence in seeking a job. <u>Id.</u> Plaintiff failed to apply to Volt and plaintiff has not produced any evidence she looked for other work. She could only recall one job, during her deposition, that she had applied for in January or February 2013.

Plaintiff insists she is entitled to economic damages at the rate of 20 hours per week from the date of her termination on February 27, 2012 through the date of trial, and lost future wages at the same rate thereafter. Plaintiff disputes Western can establish it gave her notice it had transferred its staff to Volt's management or that she received any of Naillon's communications (a March 20 voicemail and a March 22 letter). According to plaintiff, Western cannot rely on a "settlement communication" from Western's lawyer to her lawyer as it is inadmissible under FRE 408(a). Even if admissible, plaintiff contends, it is not an unconditional reinstatement offer that could cut off back pay liability since the letter offers only an opportunity "to apply for" work with Volt. Ford Motor Co v. EEOC, 458 U.S. 219, 232 (1982). Finally, plaintiff argues, an employee's failure to mitigate is a question of fact for the jury. Ortiz v. Bank of Am. Nat. Trust & Sav. Ass'n, 852 F.2d 383, 387 (9th Cir. 1987).

As an initial matter, contrary to plaintiff's assertion, in this context, the decision to award back pay is one committed to the discretion of the district court. Lutz v. Glendale Union High School, 403 F.3d 1061, 1069 (9th Cir. 2005) (ADA incorporates Title VII remedies; no right to a jury to determine appropriate amount of back pay). The case on which plaintiff relies, Ortiz, held only that whether a person reasonably refused an offer of reinstatement is a question of fact for the jury.

Further, Western does not argue its suggestion plaintiff "apply" to Volt for employment is an unconditional reinstatement offer sufficient to cut off Western's back pay liability under Ford. Peters Decl. Ex. 1, at 26; Ex. 3, at 6-7. Indeed, there is authority for the proposition that such an offer is not considered "unconditional" and would not qualify under Ford. See e.g. Kilgo v.

Bowman Transp., Inc., 789 F.2d 859, 879 (11th Cir. 1986) (offer not unconditional when it invited individual to submit an application and there was a "good chance" she would be hired).

Instead, under the test Western recites, plaintiff's back pay is limited to the time up to April 15, 2012 because Western has met its burden of showing the existence of a substantially equivalent position that plaintiff could have obtained, and that plaintiff failed to use reasonable diligence in seeking another job. Odima v. Westin Tucson Hotel, 53 F.3d 1484, 1497 (9th Cir. 1995). Here, the Volt position is evidence of an available, substantially equivalent position that plaintiff could have obtained; whether plaintiff *knew* about it is irrelevant to Western's affirmative defense.[2] Plaintiff does not contend the single position is insufficient to satisfy Western's burden, nor does she argue the job was not substantially equivalent or that she could not have obtained it.

Additionally, plaintiff made almost no attempts to secure employment. Although Plaintiff testified to applying for one part-time cook position since her termination, that was a year after her termination in January or February 2013. Because plaintiff failed to use reasonable diligence in securing other employment, she failed to mitigate her damages and her entitlement to back pay is cut off.

---

[2] If knowledge is required, I find alternatively that plaintiff knew about the Volt job opportunity. Plaintiff found Western's letter announcing Volt's management of Western's reserve employees in her own papers. Furthermore, Western's letter to plaintiff's counsel, even if deemed a settlement communication, can be used to show notice to plaintiff. Fed. R. Evid. 408(b) (court may admit evidence for another purpose).

Case 3:12-cv-01810-KI    Document 28    Filed 09/16/13    Page 15 of 15    Page ID#: 299

In sum, I find that if plaintiff proves Western discriminated against her, and if she proves she was terminated on February 27, plaintiff is entitled to the equivalent of 20 hours of back pay from February 27 to April 15, 2012.[3]

## CONCLUSION

For the foregoing reasons, Western's Motion for Summary Judgment [18] is granted in part and denied in part.

IT IS SO ORDERED.

DATED this  16th  day of September, 2013.

      /s/ Garr M. King
      Garr M. King
      United States District Judge

---

[3] A front pay award is also reduced by the amount the plaintiff could earn using reasonable mitigation efforts; a plaintiff may not "sit idly by and be compensated for doing nothing." Cassino v. Reichhold Chemicals, Inc., 817 F.2d 1338, 1347 (9th Cir. 1988).